**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

NICOLE L. McGUIRE,                            *

    *Plaintiff,*                              *

    v.                                       *          Civil Action No. RDB-25-1433

HARFORD COUNTY,                              *

    *Defendant.*                            *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

In this employment discrimination case, Plaintiff Nicole McGuire ("Plaintiff" or "Ms. McGuire") raises federal and state discrimination claims against her former employer, Defendant Harford County, Maryland ("Defendant" or "the County"). Ms. McGuire worked for the County as a Public Safety Dispatcher of varying levels between April 2001 and June 30, 2016, when her position was eliminated. (ECF No. 14 ¶¶ 1–5.) In 2016, the County informed Ms. McGuire that if she returned to its employment within seven years, she would receive full credit for her prior period of employment. (*Id.* ¶ 6.) In 2022, Ms. McGuire expressed to the County her interest in returning to work as a Public Safety Dispatcher, but Defendant required her to observe a formal application process and offered her the position of Public Safety Dispatcher, Probationary, without credit for her prior service. (*Id.* ¶¶ 8–16.) She alleges that a similarly situated, former male employee was not required to formally apply and was hired as a Public Safety Dispatcher II. (*Id.* ¶ 15.) Ms. McGuire ultimately did not return to work for the County. (*Id.* ¶¶ 18–20.)

1

Rather, on May 4, 2025, Ms. McGuire initiated this action by filing in this Court a two-Count Complaint alleging against Defendant sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). *See generally* (ECF No. 1). Defendant filed an Answer (ECF No. 7) to that Complaint, but, on July 16, 2025, Ms. McGuire filed the operative, three-Count Amended Complaint (ECF No. 14). In her Amended Complaint, she alleges against Defendant (1) sex discrimination in hiring in violation of Title VII (Count I); (2) retaliation in violation of Title VII (Count II); and (3) discrimination in violation of the Maryland Equal Pay for Equal Work Act, MD. CODE ANN., LAB. & EMPL. § 3-304(b) ("MEPWA") (Count III).

Presently pending before this Court is the County's Motion to Dismiss First Amended Complaint (ECF No. 15) ("Defendant's Motion" or "Motion to Dismiss"). Ms. McGuire has responded in Opposition (ECF No. 16), and the County has replied (ECF No. 19). The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, Defendant's Motion (ECF No. 15) is GRANTED IN PART and DENIED IN PART. Specifically, Defendant's Motion (ECF No. 15) is DENIED as to the federal Title VII claims in Count I and Count II, but it is GRANTED as to the state discrimination claim in Count III.

## BACKGROUND

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise

indicated, the following facts are derived from Plaintiff's Amended Complaint (ECF No. 14) and accepted as true for the purpose of Defendant's Motion to Dismiss (ECF No. 15).

### I.    Ms. McGuire's initial employment with Harford County

Plaintiff Nicole McGuire ("Plaintiff" or "Ms. McGuire") has worked as an emergency response professional for more than 20 years, and she began working for Defendant Harford County ("Defendant" or "the County") as a Public Safety Dispatcher in April 2001.  (ECF No. 14 ¶¶ 1–2.)  She worked for the County full-time between April 2001 and December 2014, when she went on maternity leave and returned to work part-time.  (*Id.* ¶ 2.)  Ms. McGuire rose to the level of Public Safety Dispatcher III, a position that she held for approximately 12.5 years.  (*Id.* ¶ 3.)  In June 2016, the County announced that it would eliminate all part-time positions, and Ms. McGuire's employment ended on June 30, 2016.  (*Id.* ¶ 5.)  At that time, Defendant's Director of Emergency Services, Edward Hopkins ("Mr. Hopkins"), and Deputy Director of Emergency Services, Rick Ayers ("Mr. Ayers"), informed Ms. McGuire that if she returned to work for Defendant within seven years, she would receive full credit for her prior period of employment.  (*Id.* ¶ 6.)

After the conclusion of her employment with the County in June 2016, Ms. McGuire worked as a Public Safety Dispatcher for the Belair Police Department until December 2018. (*Id.* ¶ 7.)  In October 2020, she began working as a Public Safety Dispatcher for Carroll County, and between October 2020 and January 2024, she worked as an Emergency Communications Specialist III for Carroll County.  (*Id.* ¶ 8.)  Between January 2024 and 2025, she served as an Emergency Management Operations Officer in the Maryland Joint Operations Center.  (*Id.*) In January 2025, she returned to work for Carroll County as an Emergency Communications

Specialist III.  (*Id.*)  She alleges that her positions with Carroll County and the Maryland Joint Operations Center are equivalent to Harford County's Public Safety Dispatcher position.  (*Id.*) Despite such work, as described below, Ms. McGuire began to express interest in re-employment with Harford County as early as 2020.  (*Id.* ¶ 10.)

## II.    Ms. McGuire's attempt to seek re-employment with Harford County

On May 26, 2020, Ms. McGuire sent an email to Mr. Hopkins to express her interest in returning to work full-time for Harford County as a Public Safety Dispatcher.  (*Id.* ¶ 10.) On June 2, 2020, Mr. Hopkins replied:

> I took a few days to look into this to see what we can do. We are always in need of PSD's and we know you have the skill sets. Since you have been gone for more than a year, HR will not allow us to hire without a posting. And since we just finished a posting and hiring, they will not repost for the position.

(*Id.*)  As noted above, during this period, Ms. McGuire continued working for Carroll County. On March 8, 2022, Ms. McGuire contacted R. Ross Coates, Public Safety Manager for Harford County, ("Mr. Coates"), to inquire about returning to work for Harford County.  (*Id.* ¶ 11.) She stated that her professional certifications were current and up-to-date, and Mr. Coates stated that he would get back to her.  (*Id.*)  On March 22, 2022, Mr. Coates informed Ms. McGuire that "a recruitment cycle had just wrapped up and that there were no vacant positions," but Defendant would evaluate the need for fall recruitment in the summer.  (*Id.*)

### A.  Alleged differential treatment

Ms. McGuire alleges that she was treated less favorably than a male comparator, Timothy Coale ("Mr. Coale"), who sought re-employment during this same period.  When Mr. Coale expressed interest in re-employment with the County in March 2022, it had been more than four years since he worked there.  (*Id.* ¶ 14.)  Nevertheless, in March 2022, Defendant

rehired Mr. Coale as a Public Safety Dispatcher II.  (*Id.*)  Plaintiff alleges that Mr. Coale was not required to formally apply, attend an in-person interview, or take any typing, CritiCall, or position compatibility tests prior to rehiring.  (*Id.*)  She also alleges that Mr. Coale returned to work for Defendant at a compensation rate of $61,280 per year, but, when she finally received an offer to return to work, she was offered only $45,320 per year.  (*Id.* ¶ 21.)

Like Ms. McGuire, Mr. Coale had previously worked as a Public Safety Dispatcher, including as a Public Safety Dispatcher Level III, for Harford County for approximately 15 years.  (ECF No. 14 ¶¶ 12, 13.)  Ms. McGuire alleges that she and Mr. Coale shared comparable employment history as a public safety dispatcher with Defendant: Ms. McGuire accumulated more than 20 years' experience, including 12.5 years as a Public Safety Dispatcher III, and Mr. Coale worked for Defendant for 4.5 years as a public safety dispatcher, including 22 months as a Public Safety Dispatcher III, before he was promoted to and served as Defendant's Public Safety Shift Manager until 2018.[1]  (*Id.* ¶ 21.)  Both Ms. McGuire and Mr. Coale held professional certifications for public safety dispatcher when they sought to return to work for Defendant, and both had prior experience as a Public Service Dispatcher II and III.  (*Id.*)  Moreover, Ms. McGuire had continued to work as a public service dispatcher after leaving her position with the County, while Mr. Coale had not.  (*Id.*)  Despite these similarities, she alleges that Mr. Coale received more favorable treatment when he sought re-employment.

Ms. McGuire alleges that at least one other former female employee of the County also received less favorable treatment.  According to Plaintiff, Karen Zeiler ("Ms. Zeiler") worked

---

[1] Plaintiff alleges that Public Safety Shift Manager is not an operational dispatcher position.  (ECF No. 14 ¶ 21.)

for Defendant as a Public Safety Dispatcher II for eleven years before she voluntarily resigned on December 27, 2019, and accepted a comparable position at the Maryland Public Safety Agency. (ECF No. 14 ¶ 24.) On January 16, 2020, Ms. Zeiler contacted Defendant and spoke to Defendant's Human Resources personnel about the possibility of returning to work for Defendant as a Public Safety Dispatcher II. (*Id.* ¶ 25.) She did not receive a response and, on January 22, 2020, reached out to Defendant's Human Resources Generalist Nicole Barnwell ("Ms. Barnwell"), who stated that she would discuss the possibility with Mr. Coates. (*Id.* ¶ 26.) On January 23, 2020, Ms. Barnwell informed Ms. Zeiler that her former position had been reclassified to Public Safety Dispatcher, Probationary, and had been posted between January 1 and January 16, 2020. (*Id.*) Ms. Zeiler was informed that she could not be rehired for the position and would need to wait until the next vacancy announcement was posted. (*Id.*) Ms. McGuire alleges that Ms. Zeiler was treated less favorably than Mr. Coale, reflecting a pattern of gender-based discrimination. (*Id.* ¶¶ 27–28.)

**B. Ms. McGuire applies again and raises differential treatment**

On August 8, 2022, Harford County posted an opening for Public Safety Dispatchers, Probationary. (*Id.* ¶ 15.) Plaintiff learned that to be hired for this position, she would need to (1) formally apply; (2) attend an in-person interview; and (3) take a typing test, a two-hour, online CritiCall test, and a position compatibility test. (*Id.*) Ms. McGuire completed these requirements and received an offer for the Public Safety Dispatcher, Probationary position. (*Id.* ¶ 16.) The pay rate was $21.79 hourly, which was 63 cents more per hour than a dispatcher with no experience would have been paid. (*Id.*) Mr. Coates told Ms. McGuire that Defendant could not offer to pay her more than this hourly rate because of the "guidelines." (*Id.* ¶ 17.)

Moreover, Ms. McGuire learned that, upon her return, she would have to follow the normal path for career promotion to advance to the position of Public Safety Dispatcher Level I and beyond.  (*Id.* ¶ 16.)  She would not receive credit for her prior service because, according to Defendant, it had been more than seven years since she worked for Defendant.  (*Id.*)

On September 29, 2022, during a telephone conference with Defendant's Human Resources Generalist Jacqueline Minaya ("Ms. Minaya"), Ms. McGuire complained that she received less favorable treatment than Mr. Coale had received when he was rehired in March 2022.  (*Id.* ¶ 18.)  At the end of this call, Ms. Minaya told Ms. McGuire that she would arrange for her to discuss this concern with Director of Human Resources, Tiffany Stephens ("Ms. Stephens").  (*Id.*)  The next day, Ms. Minaya sent Ms. McGuire an e-mail stating:

> As promised, I am following up with you regarding our conversation yesterday. I was able to speak with the Director of HR, Tiffany Stephens, and have explained your concerns. She advised that we are firm on the offer we provided. Since you have verbally declined that offer to us yesterday, we will proceed with other candidates. Thank you for taking the time to interview for this position. I wish you much success in your future endeavors

(*Id.*)  Ms. McGuire requested to meet with Ms. Stephens to discuss her concerns, but she alleges that "Ms. Stephens proceeded to effectively stonewall Ms. McGuire and refused to meet with her."  (*Id.* ¶ 19.)  Ms. McGuire ultimately did not return to work for the County, but she alleges that "had she been treated fairly . . . she would have accepted the opportunity to work for Defendant . . . ."  (*Id.* ¶ 20.)  Ms. McGuire alleges that this response to her efforts to raise her concern of sex discrimination constitutes impermissible retaliation.  (*Id.* ¶¶ 22–23.)

### III.    Ms. McGuire's complaint to the Equal Employment Opportunity Commission

On December 28, 2022, Ms. McGuire filed an administrative charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and cross-filed that complaint with the Maryland Commission on Civil Rights.  (ECF No. 14 ¶ 29.)  Ms. McGuire alleges that Defendant submitted a Position Statement to the EEOC on February 3, 2023.  (*Id.* ¶ 34.)  In this Position Statement, she alleges, Defendant stated that (1) Mr. Coale was rehired based on a recruitment effort for the position of Public Safety Dispatcher II that occurred between September 1 and September 15, 2021, (*id.*); (2) Ms. McGuire did not apply for Public Safety Dispatcher II in September 2021 or anytime thereafter, (*id.*); and (3) Ms. McGuire and Mr. Coale "were not hired pursuant to the same hiring process, possessed different qualifications, were hired to fill different positions, and were not similarly situated," (*id.* ¶ 35).  Ms. McGuire alleges that these statements were false, and she informed the EEOC that the only position posted in 2021 was Public Safety Dispatcher Probationary.  (*Id.*)  She alleges that, in August 2024, after the EEOC requested a copy of the original September 2021 job posting, Defendant admitted to the EEOC via email that the reference to Public Safety Dispatcher II was in error and the September 2021 recruitment effort had been for Public Safety Dispatcher, Probationary.  (*Id.* ¶¶ 36–38.)  Ms. McGuire alleges that Defendant's allegedly false statements to the EEOC demonstrate Defendant's intent to discriminate against her based on her gender and to retaliate against her.  (*Id.* ¶ 39.)

She alleges that, on September 27, 2024, the EEOC's Regional Director, Rosemarie Rhodes, issued a Determination finding reasonably cause to conclude that Defendant violated Title VII by discriminating against Ms. McGuire in hiring based on her gender, including

subjecting her to a disparate application process and offering her lower compensation than a similarly situated male applicant. (*Id.* ¶ 30.) She alleges that the EEOC determined that Defendant engaged in retaliation by "moving on to other candidates after [Plaintiff] raised her concerns about the initial job offer." (*Id.* ¶ 31.) Ms. McGuire alleges that the EEOC offered Defendant an opportunity to resolve the charges, but she declined Harford County's offer of resolution. (*Id.* ¶ 32.) She alleges that the EEOC then determined that Defendant's offer was made in bad faith and future efforts toward resolution would be futile. (*Id.*) On February 3, 2025, the EEOC issued Ms. McGuire a Notice of Right to Sue.[2] (*Id.* ¶ 33.)

## IV.    Procedural History

On May 4, 2025, Ms. McGuire initiated this lawsuit by filing in this Court a two-Count Complaint (ECF No. 1) alleging against Defendant federal claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* On June 23, 2025, Defendant filed an Answer (ECF No. 7) to Plaintiff's Complaint, and this Court subsequently issued a Scheduling Order (ECF No. 8). Within twenty-one days of Defendant's Answer,[3] however, Plaintiff filed the operative Amended Complaint (ECF No. 14) in which she alleges three claims against Defendant: (1) a federal claim of sex discrimination in hiring in violation of Title VII (Count I); (2) a federal claim of retaliation in

---

[2] The EEOC issues Notice of Right to Sue letters if it is unable to conclude that there is reasonable cause to believe discrimination occurred or if "conciliation does not succeed in resolving [a] charge" of discrimination and the EEOC decides not to litigate. *See What You Can Expect After a Charge is Filed*, U.S. EQUAL EMP. OPPORTUNITY COMM'N, https://www.eeoc.gov/employers/process.cfm.

[3] Ms. McGuire originally attempted to file her Amended Complaint on July 14, 2025, within twenty-one days of the date Defendant filed its Answer. *See* (ECF No. 10.) That filing was marked in error, however, due to failure to observe the Court's Local Rules. Ms. McGuire properly re-filed the Amended Complaint on July 16, 2025. (ECF No. 14). Generally, federal courts have recognized that "complaints which are tendered but rejected on the basis of [local] rules should be regarded as having been constructively filed." *Lacina v. G-K Trucking*, 877 F.2d 741, 742–43 (9th Cir. 1989) (collecting cases).

violation of Title VII (Count II); and (3) a state claim of discrimination in violation of the Maryland Equal Pay for Equal Work Act ("MEPWA"), MD. CODE ANN., LAB. & EMPL. § 3-304(b) (Count III).  As to Count I, she alleges that, despite being similarly situated to Mr. Coale, she faced disparate treatment when she applied for a Public Safety Dispatcher position in 2022.  (ECF No. 14 ¶¶ 41–51.)  As to Count II, she alleges that Defendant retaliated against her by refusing to discuss her concerns of disparate treatment even when she attempted to raise them to its human resources representatives.  (*Id.* ¶¶ 55–63.)  As to Count III, she alleges that, by treating her differently than Mr. Coale, the County provided "less favorable employment opportunities based on sex or gender identity" in violation of MEPWA § 3-304(b).  (ECF No. 14 ¶¶ 64–71.)

Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 15) ("Defendant's Motion to Dismiss").  Plaintiff responded in Opposition (ECF No. 16), and Defendant replied (ECF No. 19).  By consent of both parties, this Court extended the discovery deadlines in this matter pending a ruling on Defendant's Motion to Dismiss.  *See* (ECF Nos. 20, 21.)  This matter is now ripe for review.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  "'[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of

10

defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

As an initial matter, the parties dispute the timeliness of Defendant's Motion to Dismiss Counts I and II. Ms. McGuire argues that Defendant's Motion is untimely as to these Counts because it filed an Answer (ECF No. 7) to her original Complaint containing those Counts on June 23, 2025. (ECF No. 16 at 8.) In July 2025, Ms. McGuire filed her Amended Complaint (ECF No. 14), in which she newly alleges Count III but does not alter her allegations as to Counts I and II. *See* (ECF No. 14-1 (Redline of Amended Complaint)). On August 1, 2025,

11

Defendant filed its Motion to Dismiss all three Counts in the Amended Complaint. (ECF No. 15.) Ms. McGuire contends that this Motion is untimely at least as to Counts I and II.

Although Harford County filed an Answer to Plaintiff's original Complaint, "[t]he general rule . . . is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect." *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001); *cf. Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 999–1000, 1001 (9th Cir. 2007) (affirming default judgment against defendant who answered original complaint but not amended complaint). For this reason, federal district courts routinely adjudicate motions to dismiss an amended complaint even after a defendant has filed an answer to the original complaint.[4] *See, e.g.*, *Hanover Ins. Co. v. Wells Fargo Bank, N.A.*, 2019 WL 13067065, at *1 (C.D. Cal. Mar. 11, 2019); *Noe v. Ray Realty*, 2023 WL 9006285, at *2 (S.D.N.Y. Dec. 27, 2023) (collecting cases); *Alexander v. Two Oaks Invs., LLC*, 2024 WL 3747166, at *5 (N.D. Okla. Aug.

---

[4] There appears to exist some disagreement about the proper approach to a Rule 12(b)(6) motion filed as to an amended complaint where the defendant has already answered the original complaint. Under Federal Rule of Civil Procedure 12(b), a Rule 12(b)(6) motion "must be made before pleading if a responsive pleading is allowed." After a defendant files a responsive pleading, it may only seek to dismiss the case based on failure to state a claim by filing a motion under Rule 12(c). *Shelton v. Safeway, Inc.*, Civ. No. PJM-10-2358, 2011 WL 1869827, at *3 (D. Md. May 16, 2011). "Rule 12(c) allows a party to move for judgment on the pleadings, '[a]fter the pleadings are closed[,] but early enough not to delay trial.'" *Id.* at *3 (quoting FED. R. CIV. P. 12(c)). Thus, the U.S. Court of Appeals for the Fourth Circuit has construed untimely Rule 12(b)(6) motions under Rule 12(c). *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Burbach Broad. Co. Of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). As this Court has previously noted, however, "no binding authority demonstrat[es] that a court unequivocally *must*" construe an untimely Rule 12(b)(6) motion under Rule 12(c). *Stevens v. Showalter*, 458 B.R. 852, 857 n.8 (D. Md. 2011). Indeed, many courts have simply denied such untimely motions. *See, e.g., Hampton v. Barclays Bank Del.*, 2019 WL 3453570, at *2 (D. Kan. July 31, 2019); *Westwood Specialized Residential, LLC v. Mukkamala*, 2026 WL 317549, at *1 & n.2 (E.D. Mich. Feb. 5, 2026); *Igo v. Sun Life Assurance Co. of Canada*, 652 F. Supp. 3d 929, 934 (S.D. Ohio 2023).

In this case, construction under Rule 12(c) is inappropriate because the pleadings are not yet closed. Generally, the "pleadings are not 'closed' until every defendant has filed an answer." *Dunn-Mason v. JP Morgan Chase Bank Nat'l Ass'n*, 2013 WL 4084676, at *3 (E.D. Mich. Aug. 13, 2013) (collecting cases); *Stone v. Trump*, 400 F. Supp. 3d 317, 358 (D. Md. 2019). Where, as here, a defendant has not yet filed an answer to an operative Amended Complaint that alleges a new Count, the pleadings are not closed, and the Court cannot construe Defendant's Motion under Rule 12(c). *See, e.g., Houghtaling v. Downes*, 623 F. Supp. 3d 145, 162 (W.D.N.Y. 2022).

9, 2024) (concluding amended pleading extends or revives defendant's right to seek dismissal under Rule 12(b)).  Accordingly, this Court addresses Defendant's Motion to Dismiss under Rule 12(b)(6) as to all Counts.[5]

## I.      Count I: Sex Discrimination in Hiring

In its Motion to Dismiss, Harford County argues that Ms. McGuire's Title VII discrimination claim in Count I must be dismissed because she has failed to allege an adverse employment action.  (ECF No. 15-1 at 2–3.)  Specifically, it asserts that Ms. McGuire voluntarily rejected its offer of employment.  (*Id.*)  In Opposition, Ms. McGuire asserts that she has plausibly alleged that Defendant discriminated against her based on her sex by subjecting her to a disparate application process and lower pay.  (ECF No. 16 at 8–9.)  In Reply, Defendant contends that Ms. McGuire offers only conclusory allegations that do not allege discrimination with particularity.  (ECF No. 19 ¶¶ 1–2.)

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, proscribes discrimination in employment on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  Its protections extend to the hiring process.  *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 847 (4th Cir. 2001).  A plaintiff alleging discrimination under Title VII may do so using either direct or circumstantial evidence.  *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012).  Direct evidence is "evidence of conduct or statements that both reflect directly the alleged

---

[5] Some federal courts have "held that an amended complaint does not revive the right to file a post-answer motion to dismiss, with the exception that new claims may be attacked." *Brooks v. Caswell*, 2016 WL 866303, at *3 (D. Or. Mar. 2, 2016); *see Pascal v. Concentra, Inc.*, 2020 WL 4923974, at *2 (N.D. Cal. Aug. 21, 2020) (collecting cases).  Even under such an approach, consideration of Defendant's Motion is appropriate because it raised failure to state a claim upon which relief can be granted as an affirmative defense in its Answer to Plaintiff's Original Complaint.  (ECF No. 7 ¶ 30.)

discriminatory attitude and that bear directly on the contested employment decision." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999) *overruled on other grounds by Desert Palace v. Costa*, 539 U.S. 90 (2003) (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995)). Where, as here, a plaintiff alleges no direct evidence, her claim is subject to the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018).

The *McDonnell Douglas* framework generally requires a plaintiff to first make out a prima facie case of discrimination by showing "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190.  Importantly, this framework "is an evidentiary standard, not a pleading requirement."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).  "In the context of a Title VII case, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss[.]"  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz*, 534 U.S. at 515).  Rather, the Court's inquiry is limited to whether a plaintiff has alleged facts "that plausibly state a violation of Title VII 'above a speculative level.'"  *Id.* at 617 (quoting *Coleman*, 626 F.3d at 190).  In other words, the facts alleged must "support a reasonable inference that the decisionmakers were motivated by bias." *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 586 (4th Cir. 2015).  Nevertheless, as Judge Hollander of this Court has recognized, "reference to the elements of a Title VII claim is helpful to gauge the sufficiency of the allegations." *Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 734 (D. Md. 2023).

The elements of discriminatory failure-to-hire include (1) the plaintiff "belongs to a protected class;" (2) she "applied and was qualified for a job for which the employer was seeking applicants;" (3) she was rejected despite her qualifications; and (4) after her rejection, the position remained open and the employer continued to seek applicants from similarly qualified persons, or filled the position with an applicant outside the protected class. *Sears Roebuck & Co.*, 243 F.3d at 851 (citing *McDonnell Douglas*, 411 U.S. at 802). As Chief Judge Russell of this Court has explained, courts "consider[] the 'totality of the circumstances'" when evaluating whether alleged conduct gives rise to an inference of discrimination. *Hughley v. Marion*, Civ. No. GLR-22-1654, 2023 WL 5957185, at *6 (D. Md. Sept. 13, 2023) (quoting *Strothers*, 895 F.3d at 330–31). Absent any "obvious alternative explanation" for disparate treatment, a female plaintiff's allegation of harsher treatment than that of a similarly situated man is sufficient to state a discrimination claim. *West v. Noem*, Civ. No. JKB-23-1661, 2025 WL 896470, at *7 (D. Md. Mar. 24, 2025) (quoting *McLeary-Evans*, 780 F.3d at 588)); *cf. Batchelor v. City of Wilson,* 747 F. Supp. 3d 845, 860 (E.D.N.C. 2024) (rejecting Title VII sex discrimination claim where alternative explanation made claim implausible).

In this case, Ms. McGuire has alleged facts sufficient to state a sex discrimination claim under Title VII in Count I. First, she has alleged that she is a member of a protected class. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting failure to hire based on sex). Second, she has sufficiently alleged that she was qualified for the position of Public Safety Dispatcher II. At the pleading stage, a plaintiff's years of experience in a similar position satisfy the qualification element of discriminatory failure to hire. *See, e.g., Danial v. Morgan State Univ.*, 426 F. Supp. 3d 135, 144–45 (D. Md. 2019); *Sears Roebuck & Co.*, 243 F.3d at 852. Ms. McGuire has alleged

that she had over twenty years of experience as a Public Safety Dispatcher, including about twelve years as a Public Safety Dispatcher III with Defendant, and she possessed the requisite professional certifications.  (ECF No. 14 at ¶¶ 1, 3, 7–8, 21, 45.)  Thus, she has sufficiently alleged that she was qualified for the position at issue.

As to the third element of discriminatory failure-to-hire, Defendant contends that Ms. McGuire cannot establish that she was rejected from any position because it hired her as Public Safety Dispatcher Probationary.  (ECF No. 15-1 at 3.)  Ms. McGuire's claim for discriminatory failure-to-hire, however, is predicated on Defendant's failure to hire her for the position of Public Safety Dispatcher II.  (ECF No. 14 at ¶¶ 45, 50.)  That is, she alleges that she was subject to a more rigorous application process than Mr. Coale.  (*Id.* ¶¶ 14–15.)  Specifically, she alleges that she was required to formally apply for a posted probationary position, while Mr. Coale was not required to formally apply, be interviewed in person, or take typing and online tests to be hired as a Public Safety Dispatcher II in March 2022.  (*Id.* ¶ 22.)

The United States Supreme Court has recognized that "[t]he effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977); *see also Sears Roebuck & Co.*, 243 F.3d at 851 n.2.  In the failure-to-hire context, courts have relaxed the application-and-rejection requirement where applicants are dissuaded from applying "by the manner in which [the employer] publicizes vacancies." *Int'l Bhd. of Teamsters*, 431 U.S. at 365.  Although the U.S. Court of Appeals for the Fourth Circuit does not yet appear to have considered a prima facie claim of discriminatory failure-

to-hire where a position was not publicized to the plaintiff,[6] federal courts of appeal have held that "the employer's 'manner' of publication may involve the discriminatory *absence* of publication." *Volling v. Kurtz Paramedic Servs.*, 840 F.3d 378, 384 (7th Cir. 2016); *see also Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003); *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 349 (3d Cir. 1990); *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1275–76 (11th Cir. 2002). Thus, "an employee does not need to apply to establish a prima facie case when the position was not publicized." *Johnson*, 351 F.3d at 622. Where, as here, "a decision-maker disseminates information about available positions through informal channels," a plaintiff may allege a prima facie case by showing "that the company had some reason or duty to consider [her] for the post." *Walker*, 286 F.3d at 1275–76 (quoting *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984)).

In this case, Ms. McGuire alleges that Defendant did not publicize an application or inform her about an open position for Public Safety Dispatcher II in March 2022. (ECF No. 14 at ¶¶ 11–12, 38, 42.) She alleges that during this period, Defendant instead hired Mr. Coale as a Public Safety Dispatcher II, even after she reached out "to inquire about the process to return to work for Defendant" in 2020 and 2022. (*Id.* at ¶¶ 11–12, 14–15, 38, 47.) Put differently, she alleges that Defendant required her to observe its formal application process, but during the same period it permitted Mr. Coale to avoid that process and hired him in the higher-paying position of Public Safety Dispatcher II. (*Id.*) Under the relaxed requirement

---

[6] The Fourth Circuit has recognized, however, that the application requirement is relaxed in failure-to-promote claims in which the promotion is not publicized. *E.g.*, *Williams v. Giant Foods, Inc.*, 370 F.3d 423, 431 (4th Cir. 2004) ("On the other hand, if the employer fails to make its employees aware of vacancies, the application requirement may be relaxed and the employee treated as if she had actually applied for a specific position.").

17

applied to cases in which a Plaintiff alleges a "discriminatory *absence* of publication," *Volling*, 840 F.3d at 384, such allegations give rise to an inference of discrimination. *See, e.g.*, *Ferdinand-Davenport v. Childs. Guild*, 742 F. Supp. 2d 772, 781–82 (D. Md. 2010) (concluding plaintiff alleged discriminatory failure to hire where she alleged employer did not follow ordinary procedure to fill position); *Majure v. Primland, Ltd.*, 2017 WL 5013582, at \*3 (W.D. Va. Nov. 2, 2017) (deeming discriminatory failure-to-hire adequately alleged where plaintiff ultimately rejected job offer).

Finally, Ms. McGuire has sufficiently alleged that the County filled the position with a similarly situated individual outside of her protected class as required to allege the final element of discriminatory failure-to-hire. *See Danial*, 426 F. Supp. 3d at 144; *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). She alleges that Defendant hired Mr. Coale as Public Safety Dispatcher II, and that she and Mr. Coale held similar qualifications, including active professional certifications, experience as a Public Safety Dispatcher of varying levels, and prior experience working for Defendant. (ECF No. 14 ¶¶ 12–15, 21, 47, 48.) Construing all facts and inferences to favor Ms. McGuire at this pleading stage, she has alleged facts sufficient to state a claim for discriminatory failure-to-hire under Title VII. Defendant's Motion is DENIED as to Count I.

## II.    Count II: Retaliation in Violation of Title VII

Title VII renders it unlawful for an employer to retaliate against an employee "because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *See* 42 U.S.C. § 2000e-3(a). Absent direct evidence

of retaliation, a plaintiff must show: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)).  At bottom, to plead a Title VII retaliation claim, a plaintiff must "allege[] facts supporting a plausible inference that [the employer took an adverse employment action] 'because' of [her] protected activity." *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022) (quoting 42 U.S.C. § 2000e-3(a)).  In this case, the County argues that Ms. McGuire's Title VII retaliation claim in Count II must be dismissed because she has failed to plead facts sufficient to allege that (1) she engaged in a protected activity, or (2) it took any adverse employment action against her.  (ECF No. 15-1 at 3–4.)  Construing all facts and drawing all inferences to favor the plaintiff at this pleading stage, however, Ms. McGuire has alleged facts sufficient to state a claim for retaliation under Title VII.

Although Defendant argues that Ms. McGuire has not alleged participation in a protected activity, (ECF No. 15-1 at 3–4), she has sufficiently alleged that she engaged in protected activity by seeking to address the alleged discrimination.  Under Title VII, a protected activity may fall into two categories: opposition or participation.[7]  42 U.S.C. § 2000e-3(a).  As relevant to this case, the Fourth Circuit broadly defines conduct protected under the opposition clause to encompass "staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."  *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253,

---

[7] The participation clause, which is not implicated in Ms. McGuire's Amended Complaint, protects an employee from retaliation where she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a).

259 (4th Cir. 1998)). "[W]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity." *Id.* (second alteration and emphasis in original) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)). Where an employee complains of disparate treatment as compared to male co-workers, therefore, "[t]here can be no question that" her communication "was sufficient to inform her employer that [she] was objecting to perceived sex discrimination." *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 317 (D. Md. 2015). In this case, Ms. McGuire has alleged that she complained to Defendant's human resources department that she was being treated less favorably than a male applicant. (ECF No. 14 at ¶¶ 55, 56.) At the pleading stage, such allegations are sufficient to allege protected opposition to sex discrimination. *See, e.g.*, *Young*, 108 F. Supp. 3d at 317.

Similarly, Ms. McGuire has sufficiently alleged that Defendant took adverse employment action against her because of her attempt to address the alleged discrimination. Specifically, she alleges that Defendant refused to meet with her and withdrew its offer after she communicated concerns of discrimination. Although Title VII's anti-retaliation provision "is not tied to the terms and conditions of employment," "only 'materially adverse' actions . . . 'serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination'" will satisfy this element of a Title VII retaliation claim. *Herkert v. Bisignano*, 151 F.4th 157, 165–66 (4th Cir. 2025) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 358 (2024)). Ultimately, this requires a plaintiff to show that "'a reasonable employee would have found [the action] to be materially adverse,' in that it 'might have dissuaded a

reasonable worker' from pursuing a discrimination complaint." *Id.* at 166 (quoting opinion below); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Fourth Circuit has suggested that an employee's voluntary action cannot be an "actionable adverse action." *Herkert*, 151 F.4th at 166; *see Laird v. Fairfax Cnty.*, 978 F.3d 887, 894 (4th Cir. 2020)) (discussing voluntary request for transfer).

As Judge Rubin of this Court has noted, withdrawal of a job offer in response to protected activity may be sufficient to allege retaliation under Title VII. *See, e.g.*, *Hanke v. United Parcel Serv., Inc.*, Civ. No. JRR-23-2130, 2024 WL 3554973, at *12 (D. Md. July 26, 2024) (discussing retaliation claim based on withdrawal of job offer). Similarly, at the pleading stage, allegations that a defendant refused to meet with an employee "to discuss her retaliation and discrimination claims" is sufficient to allege retaliation for the purposes of a Title VII retaliation claim. *Franovich v. Hanson*, 687 F. Supp. 3d 670, 685 (D. Md. 2023). In this case, Ms. McGuire alleges she "did not return to work for Defendant, because of the disparate treatment and retaliation that she was experiencing; had such not occurred . . . she would have accepted the opportunity to work for Defendant . . . ."[8] (ECF No. 14 ¶ 20.) She further alleges that she sought to meet with Defendant's Human Resources Director, Ms. Stephens, and Ms. Stephens allegedly "stonewall[ed] [her] and refused to meet with her."[9] (*Id.* ¶ 19.)

---

[8] She also alleges that Defendant stated that "[s]ince [Plaintiff] . . . verbally declined th[e] offer to us yesterday, we will proceed with other candidates." (*Id.* ¶ 18.) She does not allege, however, that she declined any offer.
[9] Ms. McGuire also alleges that the EEOC determined that Defendant retaliated against her by "moving on to other candidates after she raised her concerns about the initial job offer." (ECF No. 14 ¶¶ 23, 31.) She attaches a determination letter from the EEOC, which states "evidence revealed that [Defendant] also retaliated against [Ms. McGuire] in violation of Title VII, after she raised concerns about the salary she was offered." (ECF No. 14-2 at 6.) Although this letter is incorporated in the Amended Complaint, this Court has previously recognized that the EEOC's "determination [does] not substitute for [a plaintiff's] obligation under Rule 8 to plead sufficient factual content to state a claim." *Ezinne v. Md. State Dep't of Pub. Safety & Corr. Servs.*, Civ. No. JKB-18-2201, 2019 WL 2162873, at *2 (D. Md. May 17, 2019) (citing Fed. R. Civ. P. 8(a)).

Construed in the light most favorable to Plaintiff, these allegations suggest that she was unable to raise her concerns of discrimination or to consider the job offer after seeking to convey those concerns.  Accordingly, Ms. McGuire has sufficiently alleged retaliation in violation of Title VII, and Defendant's Motion (ECF No. 15) is DENIED as to Count II.

### III.    Count III: Maryland Equal Pay for Equal Work Act Claim

The Maryland Equal Pay for Equal Work Act ("MEPWA") provides that "an employer may not discriminate between employees in any occupation by" either (1) paying wages to an employee at a rate less than that the employer pays to other similarly situated employees if the pay difference is based on sex, or (2) "providing less favorable employment opportunities based on sex." MD. CODE ANN., LAB. & EMPL. § 3-304(b).  Under the statute, "providing less favorable employment opportunities" includes (1) assigning to or steering the employee toward "a less favorable career track;" (2) not providing an employee information about promotions or advancement; or (3) otherwise restricting an employee's employment opportunities based on sex, sexual orientation, or gender identity.  *Id.* § 3-304(a).  MEPWA is the Maryland analogue of the federal Equal Pay Act, 29 U.S.C. § 206(d). *See Doe v. Cath. Relief Servs.*, 529 F. Supp. 3d 440, 446–47 (D. Md. 2021) (collecting cases).  Thus, "'[c]ourts have applied the same analysis in reviewing MEP[W]A and EPA claims,' because '[t]he MEP[W]A essentially mirrors . . . the EPA.'" *Cohens v. Md. Dep't of Hum. Res.*, 933 F. Supp. 2d 735, 745 (D. Md. 2013) (quoting *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 861–62 (D. Md. 2000)). "In the absence of legislative intent to the contrary," the Court reads MEPWA "'in harmony' with [its] federal corollar[y]." *Cath. Relief Servs.*, 529 F. Supp. 3d at 447 (quoting *Chappell v. S. Md. Hosp., Inc.*, 578 A.2d 766, 772 (Md. 1990)).

22

The Equal Pay Act prohibits "discrimination 'on the basis of sex by paying wages to employees . . . at a rate less than the rate . . . [paid] to employees of the opposite sex . . . for equal work.'" *Id.* (quoting 29 U.S.C. § 206(d)). As this Court has previously explained, however, "[t]he EPA [and, therefore, MEPWA] addresses *actually* paying different wages to similarly situated employees. It does not appear to apply to potential employees." *McNierney v. McGraw-Hill, Inc.*, 919 F. Supp. 853, 860 (D. Md. 1995). In this case, Ms. McGuire raises Count III under MEPWA § 3-304(b), which refers to "employees," even as other sections of the statute discuss "applicants."[10] *Compare* MD. CODE ANN., LAB. & EMPL. § 3-304.2(d) (prohibiting actions as to "an applicant for employment" and discussing "the applicant or employee") *with id.* § 3-204(b)(1) (prohibiting actions as to "employees" only). Although Ms. McGuire *has* previously worked for Harford County, her claim under MEPWA pertains entirely to the County's 2022 offer of employment. She has not alleged that she was an "employee" protected by MEPWA § 3-304(b) at the time of the alleged discrimination. Defendant's Motion is GRANTED as to Count III.

---

[10] MEPWA does not define "employee." *See* MD. CODE ANN., LAB. & EMPL. § 3-301. Such reference to "applicants" as opposed to "employees" in different sections of the Act, however, suggests that the Maryland General Assembly intentionally distinguished between the terms. *See, e.g.*, *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."); *NFIB v. Sebelius*, 567 U.S. 519, 544 (2012) ("Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally.").

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 15) is GRANTED IN PART and DENIED IN PART.  Specifically, Defendant's Motion (ECF No. 15) is DENIED as to Counts I and II, but it is GRANTED as to Count III, which is DISMISSED.

A separate Order follows.

Date: March 31, 2026

/s/_____
Richard D. Bennett
United States Senior District Judge